1

2

3

4

5

6

7                     **UNITED STATES DISTRICT COURT**

8                   **CENTRAL DISTRICT OF CALIFORNIA**

9

10   DAWAYNE MOGENSEN,                    Case No.: CV 16-5291-PSG (AS)

11              Plaintiff,
                                         **FINAL REPORT AND**
12        v.
                                         **RECOMMENDATION OF A UNITED**
13   NANCY A. BERRYHILL,[1]
     Acting Commissioner of Social       **STATES MAGISTRATE JUDGE**
14   Security,

15              Defendant.

16

17

18

19        This Final Report and Recommendation is submitted to the

20   Honorable Philip S. Gutierrez, United States District Judge,

21   pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United

22   States District Court for the Central District of California.

23   //

24   //

25   _____

26        [1]   Nancy A. Berryhill is now the Acting Commissioner of the
     Social Security Administration and is substituted in for Acting
27   Commissioner Carolyn W. Colvin in this case.
     See 42 U.S.C. § 205(g).
28

# I. PROCEEDINGS

On July 18, 2016, Plaintiff filed a Complaint seeking review of the denial of his application for Social Security Disability benefits. (Docket Entry No. 1). On December 9, 2016, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 11-12). The parties filed a Joint Stipulation ("Joint Stip.") on February 28, 2017, setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 14).

On May 12, 2017, the Court, having taken this matter under submission without oral argument, see C.D. Cal. L.R. 7-15, issued a Report and Recommendation. (Docket Entry No. 16). Defendant filed Objections to the Report and Recommendation ("Objections") on May 22, 2017. (Docket Entry No. 17). This Final Report and Recommendation now issues.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 29, 2011, Plaintiff, formerly employed as a conveyor man at a rock quarry, a water technician, and a backhoe operator, (AR 199), filed an application for Social Security Disability Insurance benefits, alleging disability beginning October 26, 2010, (AR 169-177, 210). Plaintiff alleged disability due to various physical and mental impairments, including (1) neck and back fusions; (2) right knee surgery; (3) clinical depression; (4) bi-polar disorder; (5) stomach

disease (diagnosed as [Crohn's]); (6) pituitary gland tumor; (7) anxiety; (8) extreme pain in shoulders; (9) a finger impairment; (10) gastrointestinal problems; (11) headaches; and (12) fibromyalgia. (AR 188-95, 197-209, 213-22, 225-32, 235-41).

On September 16, 2014, Administrative Law Judge ("ALJ") Mary L. Everstine heard testimony from Plaintiff and vocational expert ("VE") Mr. Van Winkle. (AR 43-62). On September 26, 2014, the ALJ issued a decision denying Plaintiff's application. (AR 11-26). The ALJ determined that Plaintiff had the following severe impairments:

> neck pain, status post C5-7 fusion (May 2002) and C4-5 fusion (December 2013); status post right knee surgery with resolved deep vein thrombosis (June 2009); back pain status post L4-5 fusion (October 2002); status post left shoulder arthroscopic, decompression, and debridement (September 2011); status post right shoulder [arthroscopic], decompression, and debridement (January 2002); sleep apnea; intermittent reports depression; GERD (20 CFR 404.1520(c)).

(AR 13).

After determining that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) (AR 14),

the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 CFR 404.1567(a),[3] with the following limitations:

> lift/carry less than 10 pounds frequently and 10 pounds occasionally; stand/walk for 4 hours total per 8 hour workday; sit 6 hours total per 8 hour workday; no climbing ladders; occasional climb, balance, stoop, kneel, crouch and crawl; no overhead reaching bilaterally; and, limited to unskilled, routine work.

(AR 15).

Based on Plaintiff's RFC, as well as his age, education, and work experience, and the finding that Plaintiff is unable to perform any past relevant work, the ALJ determined that Plaintiff could perform work as an assembler (DOT No. 713.687-018), production inspector (DOT No. 726.684-110), and sorter (DOT No. 521.687-086). (AR 24-26). Accordingly, the ALJ found

---

[2] Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

4

that Plaintiff is not disabled within the meaning of the Social Security Act. (AR 26).

In reaching this decision, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible to the extent that they conflicted with the ALJ's RFC assessment. (AR 16-17). This credibility determination was based on the ALJ's finding that Plaintiff's alleged limitations and his labored physical presentation at the hearing were inconsistent with his activities of daily living and the medical evidence overall. (AR 16-17).

In reaching her decision, the ALJ declined to give substantial weight to the opinions of Plaintiff's four treating sources (1) Dr. Julia Billington, M.D.; (2) Dr. Mark T. Montgomery, M.D.; (3) Dr. Richard D. Kahmann, M.D.; and (4) Matthew Ebling, P.A., and to two consultative sources (1) Deborah DiGiaro, Ph.D.; and (2) Dr. Dale H. Van Kirk, M.D. (AR 21-23).

On November 25, 2014, Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 7). The request was denied on June 2, 2016. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

### III. PLAINTIFF'S CONTENTIONS

Plaintiff alleges that the ALJ erred by: (1) improperly rejecting the opinions of Plaintiff's treating and examining medical sources; (2) failing to account for certain limitations in Plaintiff's RFC; and (3) discrediting Plaintiff's testimony. (Joint Stip. 2-3).

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if (1) the Commissioner's findings are supported by substantial evidence and (2) the Commissioner used proper legal standards. 42 U.S.C § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F. 3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir.

2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of support evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## V.   DISCUSSION

After consideration of the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and is free from material legal error.[4]  To the extent necessary, the Court responds to Plaintiff's Objections below.

_____

[4]   The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

Otherwise, this Report and Recommendation is substantively identical to the Report and Recommendation dated May 12, 2017. (Docket Entry No. 16).

**A. The ALJ Properly Assessed The Opinions Of Plaintiff's Treating And Examining Medical Sources**

Plaintiff complains that the ALJ "improperly rejected" the opinions of "six treating or examining medical sources who provided opinion evidence that either supports a finding that plaintiff is disabled or that he has greater limitations than those found by the ALJ in issuing the RFC finding." (Joint Stip. 4). Instead, Plaintiff argues, the ALJ "relied on the opinions of only non-examining medical sources in issuing the RFC finding." (Id.).

In general, "[t]he opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). But a treating physician's opinion "is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Id. "The ALJ need not accept the opinion of any physician including the treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

When rejecting the uncontroverted opinion of a treating physician, the ALJ must present "clear and convincing reasons." Id. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating doctor's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Inconsistencies and ambiguities within the treating physicians' own opinion create such "specific and legitimate" reasons for rejecting the opinion. Matney on behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record. Id. at 830-31.

Substantial evidence that contradicts a treating physician's opinion may consist of either (1) an examining physician's opinion or (2) a nonexamining physician's opinion combined with other evidence. Id. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Id. at 831. Such an opinion is only substantial evidence if supported by "substantial record evidence." Id.

If the ALJ determines that a treating physician's opinion is inconsistent with substantial evidence and is not to be given

controlling weight, the opinion remains entitled to deference and should be weighed according to the factors provided in 20 C.F.R. § 404.1527. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the opinion's consistency with the record as a whole; and (5) whether the physician is a specialist giving an opinion within his specialty. 20 C.F.R. § 404.1527. If a treating physician's opinion is not sufficiently supported by medical evidence and other substantial evidence in the case, however, the ALJ need not give the opinion controlling weight. Orn, 495 F.3d at 631.

**1. Dr. Julia A. Billington, M.D.**

Dr. Julia Billington, M.D., Plaintiff's general internist, treated Plaintiff nine times between March 31, 2009 and November 8, 2012 for various ailments, including neck, back, and shoulder pain. (AR 291-300, 410-19, 552-60). On March 2, 2012, Dr. Billington completed a mental medical source statement (MSS) regarding Plaintiff. (AR 365-66). On March 9, 2012, Dr. Billington completed a physical MSS. (AR 367-68). On March 10, 2012, Dr. Billington completed another mental MSS that had been partially completed by Plaintiff. (AR 369-73). In each of these statements, Dr. Billington opined that Plaintiff had extreme limitations.

Assessing physical limitations, Dr. Billington checked off boxes indicating that Plaintiff could stand/walk less than two hours in an eight-hour workday and that he could never climb, balance, crouch, or crawl. (AR 367-68). With regard to mental limitations, Dr. Billington checked off boxes indicating that Plaintiff had "poor" abilities to understand and remember detailed or complex instructions, attend and concentrate on a sustained basis, interact with the public and supervisors, adapt to changes in the workplace, and be aware of hazards and react appropriately. (AR 365-66).

Dr. Billington's opinions conflicted with the two state agency physicians who reviewed Plaintiff's medical records. Dr. H.M. Estrin, for instance, reviewed the medical records and completed a "Physical Residual Functional Capacity Assessment" form on October 17, 2012. Dr. Estrin opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 4 hours in an eight-hour workday, and sit about 6 hours in an eight-hour workday. He further opined that Plaintiff can do only occasional postural activities and that he cannot climb ladders, ropes, or scaffolds. (AR 74-76). Dr. Estrin also commented that Dr. Billington's MSS was unsupported by the objective medical evidence. (AR 75).

A second state agency reviewing physician, Dr. B. Harris, affirmed Dr. Estrin's findings on March 20, 2013. (AR 92-93). Dr. Harris also noted that Plaintiff "is only partially credible" and that the objective evidence did not support

Plaintiff's claims of high blood pressure, abdominal swelling, or his "heart being out of beat." (AR 92).

After a thorough summary of the medical evidence in the record, (AR 13-23), including the state agency physicians' opinions, the ALJ assigned little to no weight to Dr. Billington's opinions, (AR 23). The ALJ stated that Dr. Billington's opinions appear "to be based primarily on the subjective statements of [Plaintiff] and are not based on the objective evidence" and that her opinions are "wholly inconsistent with [Plaintiff's] treatment records, which show [Plaintiff] has improved with medication and treatment." (Id.). In fact, the ALJ noted, "the objective medical evidence confirmed that [Plaintiff] had improved or at least stabilized." (Id.). In making this ruling, the ALJ credited the state agency assessments over Dr. Billington's. (Id.).

Plaintiff complains that the ALJ's reasons for "reject[ing]" Dr. Billington's opinions are "inaccurate, and therefore not specific and legitimate." (Joint Stip. 5). Plaintiff cites to his medical treatments, including his neck fusion surgeries and lumbar spine fusion surgery, to demonstrate that Dr. Billington's opinions are well-supported by objective treatment records.

However, the ALJ thoroughly reviewed and discussed all such objective evidence, including evidence of Plaintiff's surgeries and other procedures, and reasonably determined that substantial

objective evidence contradicted Dr. Billington's opinions. The ALJ observed, for example, that among records of medical procedures are notes showing periodic improvements, describing Plaintiff's pain as "moderate, dull aching," and indicating that Plaintiff was "in no acute distress." (AR 18-19, 477, 532, 537, 543). Indeed, Dr. Billington's treatment notes observe, among other things, that Plaintiff was "very pleasant" and "in no acute distress," with "grossly intact" musculoskeletal strength and "[n]o cyanosis, clubbing or edema" in the extremities. (AR 559, 563).

After fully evaluating the record and finding an absence of objective medical evidence to support Dr. Billington's opinions, the ALJ reasonably concluded that Dr. Billington relied largely on Plaintiff's subjective statements. The ALJ was thus allowed to reject those opinions once the complaints themselves were properly discounted, as they were here. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have been properly discounted.")

Plaintiff also contests the ALJ's conclusion that "multiple sources" contradict Dr. Billington's opinions. (Joint Stip. 7). Plaintiff asserts that the five other treating or examining sources were generally supportive of Dr. Billington's opinions and that "[t]he only medical opinions that contradict Dr.

Billington's are those of the ... state agency non-examining medical consultants." (Id.).

Notwithstanding Plaintiff's contentions, however, the ALJ considered the non-examining medical opinions in conjunction with other evidence, including objective medical records and Plaintiff's activities of daily living. Taken together, substantial evidence supports the ALJ's rejection of Dr. Billington's opinions.

In his Objections, Plaintiff argues that the validity of the non-examining physicians' opinions is severely undermined by the fact that they only reviewed Plaintiff's "partial file." (Objections at 12). Plaintiff asserts that his "attorney submitted over 170 combined pages of medical records" after these physicians completed their review. (Id.). But Plaintiff fails to articulate what new and impactful information these additional records provide, how these records demonstrate that his condition significantly worsened, or how their inclusion would have altered the examining physicians' assessment of Plaintiff's medical conditions.

Plaintiff also contends that the ALJ erred by rejecting Dr. Billington's opinions on Plaintiff's mental limitations. (Id. at 13). The ALJ gave "no weight" to these opinions apparently because they were "outside the scope of [Dr. Billington's] specialty" as an internist rather than a psychologist or psychiatrist. (AR 23). To the extent the ALJ erred by

rejecting opinions on this basis,[5] however, the error was harmless.

The ALJ's decision overall observes a lack of evidence in the record to support the mental limitations in Dr. Billington's opinions – including "poor" abilities to understand detailed or complex instructions, concentrate on a sustained basis, interact with the public and supervisors, and adapt to changes in the workplace. (AR 365-66). As the ALJ noted, for example, Plaintiff reported that he prepares meals, drives, shops with his wife, and attends his son's football games, among other activities. (AR 16, 24, 188-93). He also reported that he can follow written and spoken instructions, that he loves changes in routine at work, and that he gets along "great" with authority figures. (AR 16, 24, 193-94).

In addition, as further objective basis for discrediting opinions of Plaintiff's debilitating mental limitations, the ALJ observed that Plaintiff "has no formal mental health treatment or psychiatric hospitalizations," as well as "no history of clear-cut mania, psychosis or anxiety disorders." (AR 20, 21).

---

[5] While the SSA generally affords less weight to the medical opinion of a source who is not a specialist, 20 C.F.R. § 404.1527, an ALJ cannot reject a treating physician's opinion on a claimant's mental condition merely on the basis that the source is not a psychologist or psychiatrist, see Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).

Instead, Plaintiff "is simply prescribed antidepressants by his primary care doctor." (AR 21).

The ALJ found that the objective evidence in the record supported the opinions of the state agency reviewing psychologist, rather than those of Dr. Billington. (AR 20). Dr. Mark Berkowitz, Psy. D., reviewed Plaintiff's medical record and completed a "Psychiatric Review Technique" form on May 18, 2012, opining that Plaintiff has mild limitations in activities of daily living; moderate limitations in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation. (AR 72). Dr. Berkowitz also commented that Plaintiff "has a severe [mental] impairment but objective findings and functioning as reported by [Plaintiff] do not suggest such severe impairment as to preclude all work." (AR 77). State agency reviewing physician Dr. F.L. Williams, M.D., affirmed Dr. Berkowitz's findings on March 20, 2013 (AR 91), and further commented that Plaintiff's "[a]llegations are partially credible," as Plaintiff "appears able to persist at simple work tasks within his physical limitations," (AR 96). The ALJ gave great weight to these reviewing opinions. (AR 20).

Thus, the ALJ properly rejected Dr. Billington's opinions by articulating specific and legitimate reasons that are supported by substantial evidence.

**2.  Dr. Mark T. Montgomery, M.D.**

Dr. Mark Montgomery, M.D., a hand surgeon, treated Plaintiff from approximately November 5, 2010 to March 21, 2014. (A.R 436-54; 592-616).  During this period, Dr. Montgomery saw Plaintiff for, among other things, near amputation of his right small finger and treatment and surgery for Plaintiff's bilateral shoulders.  (AR 387-92, 437-54, 592-616).

On June 13, 2014, Dr. Montgomery completed a "clerk form" MSS, in which he checked off boxes indicating that Plaintiff could rarely lift or carry up to ten pounds, and never more, could never reach overhead, could only occasionally reach in all other directions, and commented that Plaintiff had "S/P cervical spine surgery with permanent impairment."  (AR 618-19).  On several occasions, Dr. Montgomery also commented that Plaintiff was "[t]emporarily totally disabled" or, alternatively, was restricted from using both hands for "heavy, repetitive or forceful use."  (AR 437-454).

The ALJ afforded Dr. Montgomery's opinions little weight and found that his MSS "and other medical opinions reported in the medical evidence ... appear to be based primarily on the subjective statements of [Plaintiff], and are not based on the objective medical evidence."  (AR 22).  The ALJ further found that Dr. Montgomery's opinions "are contradicted by multiple sources, which include the State Agency reviewers," and that

"the MSS is a 'check form' statement with no attached objective documentation (or reference to objective evidence)." (Id.).

Plaintiff complains that the ALJ's reasons for rejecting Dr. Montgomery's opinions – that they appear to be based on subjective statements, are not based on objective medical evidence, and are contradicted by multiple sources – are identical to the reasons asserted for assigning little weight to Dr. Billington's opinions. Plaintiff thus "reincorporates the arguments ... as to why these are not specific and legitimate reasons to reject Dr. Montgomery's opinions." (Joint Stip. 9). Plaintiff further complains that the ALJ's rejection of Dr. Montgomery's opinions because he provided them on a "check box" form is not a legitimate basis for rejecting them where, as here, the treating physician's opinions are consistent with his own treatment notes as well as Plaintiff's testimony. (Joint Stip. 10).

The Court finds that the ALJ provided a thorough and reasoned review of the entire record and articulated specific and legitimate reasons for assigning little weight to Dr. Montgomery's opinions. The ALJ observed, in addition to the objective evidence detailed above, how Dr. Montgomery's treatment records show that Plaintiff was improving through therapy and other treatments, though he continued to undergo treatments to alleviate ongoing or recurring pain and symptoms in his neck and shoulders. (AR 18). The ALJ noted that "the only work restriction opined by Dr. Montgomery was no bilateral

use of [Plaintiff's] hands - no heavy, repetitive, forceful use." (Id. (emphasis omitted)). Overall, the clear implication from the ALJ's discussion is that, despite Plaintiff's continued reliance on treatment and procedures, the medical records fail to reflect the degree of debilitating pain or limitations to support an inability to work.

Furthermore, the fact that Dr. Montgomery's opinion was expressed through a standardized, check-the-box form that provided no supporting reasoning or clinical findings provides further basis for affording it minimal weight. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (concluding that an ALJ properly discounted physician's assistant's opinion when it "consisted primarily of a standardized, check-the-box form in which she failed to provide supporting reasoning or clinical findings, despite being instructed to do so"). It would be "error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported . . . or if it is inconsistent with the other substantial evidence." Social Security Ruling 96-2p. Here, the ALJ found that Dr. Montgomery's other opinions appeared to be based on Plaintiff's subjective statements. (AR 22). The ALJ reasonably concluded that, despite Dr. Montgomery's past treatment notes, there was no objective medical evidence to support the conclusions listed on the MSS and noted that the MSS had "no attached objective documentation (or reference to objective evidence)." (AR 22).

The ALJ determined, after fully evaluating the record and considering the lack of supporting objective evidence, that Dr. Montgomery, like Dr. Billington, relied on Plaintiff's subjective statements. Because Dr. Montgomery appeared to have based his opinion largely on Plaintiff's subjective complaints, the ALJ was allowed to reject that opinion once those complaints had been properly discounted, as they have been. See Andrews, 53 F.3d at 1043.

Plaintiff also complains that the ALJ improperly commented that Dr. Montgomery "uses the exact same language in all CTS cases" and argues that this is not a legitimate basis for rejecting his opinions. (Joint Stip. 10). Specifically, when assessing Dr. Montgomery's opinions, the ALJ remarked that "Dr. Montgomery uses the same exact language in all CTS cases and he treated [Plaintiff] only for shoulders with no indication of objective hand abnormalities." (AR 22). The ALJ continued, "Such a lack of documentation, and inconsistency, which borders on advocacy, fails to support the limitations provided in the MSS." (Id.).

The ALJ's remarks here, though inartfully phrased, essentially convey that Dr. Montgomery's hand-restriction opinion lacks any apparent objective basis in Dr. Montgomery's own treatment records and thus seems out of place. To the extent the ALJ may have improperly relied partly on extra-record evidence of Dr. Montgomery's "CTA cases" to reject Dr. Montgomery's opinions here, the error is harmless. The offhand

reference to CTA cases has little bearing on the ALJ's decision to reject Dr. Montgomery's opinions. That decision rests mainly on specific, legitimate reasons, namely the lack of supporting objective medical evidence, conflicts with other medical opinions, and reliance on Plaintiff's subjective statements. Substantial evidence supports the ALJ's assessment.

**3. Dr. Richard D. Kahmann, M.D.**

Dr. Richard Kahmann, Plaintiff's primary treating worker's compensation physician, treated Plaintiff intermittently between 2002 and 2013. (AR 487-502; 503-16; 517-18; 521-29; 536-37; 400-07; 538-42; 546-49).

Plaintiff complains that the ALJ's "reasons for rejecting the opinions of Dr. Kahmann are essentially the same and at times verbatim to those the ALJ asserted for rejecting Dr. Montgomery's opinions ... and again are equally improper." (Joint Stip. 12). Plaintiff "reincorporates the arguments made [regarding Drs. Montgomery and Billington] as to why these are not specific and legitimate reasons to reject Dr. Kahmann's opinions." (Id.).

In an MSS dated June 20, 2014, Dr. Kahmann checked off boxes indicating that Plaintiff could lift/carry less than 10 pounds, stand/walk less than 2 hours in an 8-hour workday, sit less than 6 hours in an 8-hour workday, and had severe bilateral push/pull limitations with his upper and lower extremities. Dr.

Kahmann also commented that Plaintiff "cannot work 8 hour work day" and needs to lay down to rest for "30 minutes" at random intervals throughout the day. (AR 621-22).

The ALJ assigned little weight to Dr. Kahmann's opinion, noting that Dr. Kahmann had completed a "check box" MSS which appeared to be "based primarily on the subjective statements" of Plaintiff, was not based on the objective medical evidence, and was inconsistent with Dr. Kahmann's own notes as well as multiple other sources' opinions. (AR 22-23).

Specifically, the ALJ noted that on October 3, 2011, Dr. Kahmann reported that Plaintiff's neurological exam showed good strength and sensation in both upper and lower extremities. Dr. Kahmann did not note any extreme pain behaviors nor recommend any further pain management treatment beyond Plaintiff's reasonable intake of three Vicodin a day for pain management. (AR 288-89, 517-18). A May 7, 2012 MRI scan of the cervical spine showed no stenosis with progression of degenerative changes and only moderate canal stenosis. (AR 519-20). While follow-up treatment notes by Dr. Kahmann from April to December 2013 report that Plaintiff's cervical pain was increasing, the pain was consistently characterized as "moderate, dull aching pain in his neck," and Dr. Kahmann's physical examination notes repeatedly report Plaintiff as being neurologically intact and in "no acute distress," as well as having normal muscle tone. (AR 521-50, 575-77, 623-25).

On October 31, 2013, Plaintiff reported that his pain was "better" after his last set of injections and Dr. Kahmann recommended "conservative management." (AR 526). The ALJ noted that, despite these reports, Dr. Kahmann proceeded with cervical fusion surgery on December 10, 2013. (AR 19, 538-50). Plaintiff was referred to Pacific Pain Physicians on December 13, 2013 and subsequently reported having relief of his upper extremity symptoms. (AR 570). The ALJ also noted that when Plaintiff saw Dr. Kahmann on June 20, 2014, he complained of neck pain, back pain and radicular pain, and reported his pain to be a 6 on a 0/10 pain scale. However, Plaintiff simultaneously reported relief of his pain as well as his reactive depression with the use of Effexor. (AR 19). The ALJ further noted that, at this appointment, while Plaintiff alleged being "uncomfortable" due to pain, his "motor strength was 4/5; [he] had only diminished sensation; and, was alert, cooperative and maintained good eye contact." (AR 19, 626-28).

With regard to Dr. Kahmann's MSS, the ALJ stated, "[m]oreover, the MSS is a 'check form' statement with no attached objective documentation (or reference to objective evidence) to support such a restrictive residual functional capacity. Such a lack of documentation, and inconsistency, which borders on advocacy, fails to support the limitations provided in the MSS." (AR 22-23).

After providing a thorough and reasoned review of the entire record, the ALJ assigned little weight to Dr. Kahmann's

23

opinions, finding that they were based on Plaintiff's subjective statements rather than objective medical evidence, and were contradicted by multiple sources, including Dr. Kahmann's own treatment notes. These were specific and legitimate reasons for discounting Dr. Kahman's opinions.

In his Objections, Plaintiff argues that both the Magistrate Judge and the ALJ erred by misattributing to Dr. Kahmann a June 20, 2014 medical report authored by Physician's Assistant Matthew Ebling. (Objections at 20). This assertion is addressed below.

### 4.   Matthew Ebling, P.A.

Physician's Assistant Matthew Ebling administered pain management to Plaintiff following his December 10, 2013 cervical fusion surgery. (AR 578-79, 582, 587-91, 626-28). On June 20, 2014, P.A. Ebling noted that Plaintiff was "not capable of any work due to the ongoing and chronic pain. He spends most of his day laying [sic] in bed per the patient due to the severe pain." (AR 627).

Physicians' assistants, such as P.A. Ebling, are defined as "other sources" and are therefore entitled to less deference than traditional medical sources, such as doctors and psychiatrists. 20 C.F.R. § 404.1513(d); Molina, 674 F.3d at 1111. An ALJ need only give germane reasons to discount opinions of physician's assistants. See Turner v. Comm'r of

Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

Plaintiff contends that the ALJ "failed to recognize or address this opinion" in violation of a "well-established legal requirement that an ALJ must give full consideration to the testimony of sources who are not 'acceptable medical sources' and can only reject such written evidence by providing germane reason[s] for rejecting it." (Joint Stip. 12) (citation omitted).

In his Objections, as noted above, Plaintiff also argues that that ALJ and Magistrate Judge erred by misattributing P.A. Ebling's June 20, 2014 medical report to Dr. Kahmann. (Objections at 5). Thus, by Plaintiff's own admission, the ALJ did recognize and address P.A. Ebling's medical report, albeit under the apparent misunderstanding that it came from a treating physician rather than a physician's assistant. The misattribution is unlikely to have caused a less favorable review.

Moreover, while it is true that the ALJ did not specifically address P.A. Ebling's statement that Plaintiff was "not capable of any work due to the ongoing and chronic pain," (AR 627), the error is harmless. The ALJ evaluated the medical report and noted that a review of Plaintiff's "systems was negative and his physical examination noted that [Plaintiff] was 'uncomfortable' due to pain," though "[h]is motor strength was

4/5; [he] had only diminished sensation; and [he] was alert, cooperative and maintained good eye contact." (AR 19). The ALJ further commented that none of the recorded observations were consistent with Plaintiff's presentation of intractable pain at the hearing. (AR 19). It is reasonable to infer, then, that the ALJ found P.A. Ebling's ultimate opinion of ongoing and chronic pain to be inconsistent with the objective evidence of record, including P.A. Ebling's own report.

Furthermore, such opinions of a claimant's vocational capacity are outside a medical source's expertise and thus are not accorded much weight. See 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). The ALJ must consider medical opinions about a Plaintiff's condition and functional limitations, along with all other evidence in the record, to determine whether a Plaintiff is disabled under the Social Security Act. The ALJ did so here, and substantial evidence supports the ALJ's findings.

   **5.  Dr. Deborah DiGiaro, Ph. D.**

   Dr. Deborah DiGiaro, Ph.D. in Psychology, examined Plaintiff and performed a mental status examination on April 22,

26

2012.  (AR 374-79).  Dr. DiGiaro diagnosed Plaintiff with major depression, severe, without psychotic features, single episode; pain disorder; and a Global Assessment of Functioning ("GAF") score of 60.[6]  Dr. DiGiaro opined that Plaintiff is "severely impaired" in three areas of workplace functioning: (1) ability to maintain regular attendance; (2) ability to complete a normal workday/workweek without interruptions from a psychiatric condition; and (3) ability to deal with the stress encountered in a competitive workplace environment.  (AR 378).

The ALJ assigned "very limited weight" to Dr. DiGiaro's opinion, noting that it was a "one time examining medical opinion" which was not "supported by either objective evidence" or her "own mental status examination, which is essentially within normal limits."  (AR 22).  The ALJ also stated as follows:

Though [Plaintiff] alleged depressive symptoms, he has no history of psychiatric hospitalizations and no history of suicide attempts.  He had marital therapy about 10 years ago with his current wife; otherwise, he [has] had no individual outpatient psychiatric treatment.  He is simply prescribed antidepressants by

---

[6]    A GAF score of 51–60 reflects moderate symptoms or moderate difficulty in social or occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Rev. 2000).

his primary care doctor; and, he has no history of
clear-cut mania, psychosis or anxiety disorders.

(AR 21).

Plaintiff complains that the ALJ's reasons for rejecting Dr. DiGiaro's opinions are inaccurate and, therefore, not specific and legitimate. (Joint Stip. 14-15). First, Plaintiff contends, the treatment records document Plaintiff's treatment for depression and bipolar disorder and thus constitute objective evidence in support of Dr. DiGiaro's opinions. (Joint Stip. 14). However, the ALJ provided a thorough review of the medical record and enumerated examples of objective evidence that was lacking. The ALJ reasonably determined that prescriptions for anti-depressants, on their own, do not constitute objective evidence of impairment so severe as to preclude all work. (AR 21).

The ALJ also considered Dr. DiGiaro's opinions in conjunction with those of two state agency reviewing doctors, Mark Berkowitz, Psy. D., and F.L. Williams, M.D., who both determined that objective evidence did not support a finding of such a severe impairment as to preclude all work. The ALJ reasonably afforded greater weight to these opinions. (AR 20).

As set forth above, Dr. Berkowitz, a state agency psychiatrist, reviewed the medical evidence and completed a "Psychiatric Review Technique" form dated May 18, 2012, finding

that, while Plaintiff has a severe impairment, objective findings and functioning as reported by Plaintiff do not suggest such a severe impairment as to preclude all work. (AR 72, 77). Specifically, Dr. Berkowitz noted that Plaintiff had no formal mental health treatment or psychiatric hospitalizations and that he appears able to persist at simple work tasks within his physical limitations. (Id.). Similarly, on March 20, 2013, Dr. Williams, a reviewing physician, also noted that medical evidence did not support Dr. DiGiaro's opinions that Plaintiff had a severely impaired ability to deal with stressors and to complete a normal work schedule. (AR 95).

Plaintiff additionally disputes the ALJ's assertion that Dr. DiGiaro's own mental status examination conflicted with her opinions. Plaintiff notes that Dr. DiGiaro's mental status examination found that Plaintiff "had a restricted affect and depressed mood, a limited fund of information and difficulty articulating, had difficulty with serial calculations, and had 'neurovegetative features of depression.'" (Joint Stip. 14 (citations omitted)).

Contrary to Plaintiff's contention, the ALJ did not conclude that Dr. DiGiaro's evaluation conflicted with her opinion that Plaintiff showed signs of depression. Instead, the ALJ reasonably determined that Dr. DiGiaro's evaluation conflicted with her opinion that Plaintiff's impairment is so severe as to preclude all work. An individual may show signs of serious depression and still be capable of certain work.

Thus, the ALJ's finding that Dr. DiGiaro's opinions contradicted other medical opinions, were internally inconsistent, and were not supported by objective medical evidence constituted specific, legitimate reasons based on substantial evidence in the record for assigning little weight to Dr. DiGiaro's opinion.

### 6. Dr. Dale H. Van Kirk, M.D.

Dr. Dale Van Kirk, M.D., conducted an orthopedic consultative examination of Plaintiff on September 23, 2012 and opined, among other things, that Plaintiff could stand and/or walk cumulatively for four hours out of an eight-hour workday, could sit cumulatively for four hours out of an eight-hour workday, and was limited to only occasional postural activities. (AR 393-98).

The ALJ assigned "limited [weight] to this one time examining medical opinion" because it seemed "to primarily rely on the subjective statements" of Plaintiff. The ALJ also stated that, "[i]n addition, the examining physician's medical opinion has been brought into question by multiple reviewing sources who have had an opportunity to review more recently developed medical evidence, which shows that [Plaintiff] is not as limited as opined by this examining source." (AR 21).

Plaintiff contends that the ALJ failed to offer specific and legitimate reasons for rejecting the opinion of Dr. Van

Kirk. Plaintiff specifically asserts that nothing in Dr. Van Kirk's report supports "the allegation that he relied primarily on plaintiff's subjective complaints." (Joint Stip. 15). Plaintiff also argues that the two medical sources cited as questioning Dr. Van Kirk's opinions were the two state agency non-examining medical consultants who did not have access to records that Plaintiff alleges support a finding that he is disabled. (Joint Stip. 16).

The ALJ reasonably concluded that Dr. Van Kirk relied primarily on Plaintiff's subjective statements. Among other things, the ALJ reviewed Dr. Van Kirk's physical examination, as follows:

> [Dr. Van Kirk noted that [Plaintiff] was in no acute distress; sat comfortably [in the] examination chair; walk[ed] round the examination room and [got] on [and] off the exam table without too much difficulty; and [was] dressed appropriately . . . . [He] had some difficulty with his coordination, station and gait. . . . The remaining portion of the physical examination noted some limited range of motion and positive straight leg raising, but only at the upper echelon of movement.

(AR 21). The ALJ further noted that Dr. Van Kirk reviewed two MRI studies showing no evidence of rotator cuff tendon problems,

but marked AC joint arthrosis in the left shoulder and a slight widening of the AC joint in the right shoulder. (AR 21).

Based on the results of Plaintiff's physical exam and a review of his MRIs, the ALJ reasonably determined that Dr. Van Kirk's ultimate opinions were based primarily on Plaintiff's subjective statements rather than on objective evidence or exam results. And given that the ALJ also rejected Plaintiff's credibility, the ALJ provided specific, legitimate reasons for giving only limited weight to Dr. Van Kirk's opinions.

**B.** **The ALJ Did Not Err In Determining Plaintiff's Residual Functional Capacity**

After a thorough evaluation of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work with the following limitations:

> lift/carry less than 10 pounds frequently and 10 pounds occasionally; stand/walk for 4 hours total per 8 hour workday; sit 6 hours total per 8 hour workday; no climbing ladders; occasional climb, balance, stoop, kneel, crouch and crawl; no overhead reaching bilaterally; and, limited to unskilled, routine work.

(AR 15).

Plaintiff contends that the RFC finding "fails to encompass all of Plaintiff's physical and mental limitations supported by the record." (Joint Stip. 21). Plaintiff also claims that the RFC is incomplete because it omits limitations related to fibromyalgia, adrenal insufficiency, and headaches, as well limitations in accord with Dr. Montgomery's hand restriction and the ALJ's step-three findings. (Id. at 22-25; Objections at 27-33).

A RFC assessment is not a medical opinion. Rather, it is an "administrative finding" the ALJ reaches after considering all the relevant evidence, including diagnoses, treatment, observations by treating physicians, medical records, and the claimant's own subjective symptoms. See Social Security Ruling 96-5p; 20 C.F.R. § 404.1527 (e)(2) (a residual functional capacity finding is not a medical opinion but an administrative finding that is reserved to the Commissioner).

Plaintiff also contends that the RFC finding "fails [to] integrate the impact of plaintiff's fibromyalgia" and that, regardless of "whether the ALJ was correct in finding that his fibromyalgia was not severe, the functional impacts of this impairment must be integrated into the RFC finding." (Joint Stip. 22-23 (citation omitted)). Similarly, Plaintiff claims that the ALJ failed to integrate "into the RFC finding any limitations related to plaintiff's adrenal insufficiency and headaches, such as stamina, concentration, attention, focus, and work pace deficits, the need for unscheduled breaks, and the

likelihood of absenteeism from work." (Joint Stip. 24 (citations omitted)).

With respect to Plaintiff's claims of fibromyalgia, the ALJ found that "the medical records do not document any significant limitations and/or treatments from a qualified medical source for the necessary durational requirement of 12-consecutive months" and that "the medical evidence is silent as to a complete diagnosis and work-up for the condition." (AR 13, 14). Plaintiff contends that even if the ALJ correctly found that his fibromyalgia was not severe, the RFC finding needed to incorporate "the functional impacts of this impairment." (Joint Stip. 22-23; Objections at 28-29).

The Court disagrees. While Plaintiff's medical records do mention fibromyalgia and related symptoms (e.g., AR 417, 559), the ALJ reasonably determined, based on substantial evidence in the record, that this condition did not warrant greater limitations in the RFC finding. Relatedly, as discussed further below, the ALJ properly rejected Plaintiff's statements regarding pain and other symptoms.

As for Plaintiff's alleged adrenal insufficiency and headaches, any error in the ALJ's failure to specifically address these conditions was harmless. As a threshold matter, in interpreting the evidence and developing the record, an ALJ need not discuss all of the evidence presented. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing

<u>Vincent v. Heckler</u>, 739 F.2d 1393, 1393-95 (9th Cir. 1984)). Here, the ALJ considered a wide range of alleged severe conditions, thoroughly examined the medical record and relevant testimony, and appropriately determined that Plaintiff was capable of performing sedentary work. The ALJ's evaluation of the record included a review of depression-related symptoms similar to those allegedly caused by adrenal insufficiency and headaches, including issues with concentration, ability to maintain attendance, stamina, and pace. (AR 20). To the extent that the RFC finding omits limitations related to these conditions, there is substantial evidence in the record to support the ALJ's finding.

Plaintiff asserts that the RFC fails to account for Dr. Montgomery's opinion restricting Plaintiff to "[n]o heavy, repetitive, or forceful use of the hands" despite the ALJ's parenthetical remark that "this restriction does not conflict with" the RFC finding. (Joint Stip. 22; AR 18). Notwithstanding the ALJ's parenthetical remark, the ALJ appropriately assigned little weight to Dr. Montgomery's opinions because they were "not based on objective medical evidence" and were "contradicted by multiple sources." (AR 22). Indeed, the ALJ noted that Dr. Montgomery gave "no indication of objective hand abnormalities." (<u>Id.</u>). Thus the ALJ effectively rejected the hand limitation as opined by Dr. Montgomery, and substantial evidence in the record supports that determination.

In his Objections, Plaintiff further contends that even if the ALJ properly rejected the opinions on this issue, "the objective evidence from Drs. Montgomery, Van Kirk and others . . . shows reduced range of motion and weakness in the shoulders and clearly warrant some level of RFC limitations with reaching, handling, and fingering." (Objections at 27). The Court disagrees. To the extent the medical records offer objective evidence of such limitations, the ALJ clearly addressed and considered this evidence in her decision. Based on substantial evidence in the record, however, the ALJ reasonably determined that Plaintiff did not require further limitations than those set forth in the RFC finding.

Plaintiff argues that the RFC limitation to "unskilled, routine work" fails to adequately account for the ALJ's step-three findings of "moderate difficulties" in social functioning and in concentration, persistence, or pace. (Joint Stip. 24-28; Objections at 30-33). To support this contention, Plaintiff cites <u>Brink v. Comm'r Soc. Sec. Admin.</u>, 343 F. App'x 211, 212 (9th Cir 2009), an unpublished case in which the Ninth Circuit concluded that an RFC limiting the claimant to simple, repetitive work did not adequately capture the functional limitations deriving from the claimant's moderate difficulties in concentration, persistence or pace.

Contrary to Plaintiff's contention, however, the record supports the ALJ's finding that Plaintiff is capable of performing unskilled, routine work, and the ALJ reasonably

determined that further mental limitations were unwarranted. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony"); see also Bennett v. Colvin, 202 F. Supp. 3d 1119, 1127 (N.D. Cal. 2016) (noting that "other courts have interpreted Brink as limited to cases in which medical evidence demonstrates the plaintiff's difficulties in concentration, persistence, or pace, but does not demonstrate that these may be translated into limitations to simple or repetitive work").

Substantial medical evidence reflects that Plaintiff, at a minimum, did not have understanding and memory limitations and was able to carry out very short and simple instructions. (AR 76, 94). In reviewing the evidence, the ALJ noted that Dr. DiGiaro "did not find that [Plaintiff's] concentration was not intact," (AR 22), and Drs. Berkowitz and Williams both found that Plaintiff's concentration was intact. Dr. DiGiaro further found that Plaintiff's ability to accept instructions from supervisors is only mildly impaired. (AR 22). In addition, Plaintiff himself reported that he can follow written and spoken instructions and that he loves changes in routine at work. (AR 16, 24, 188-94).

As for social functioning, Drs. Berkowitz and Williams both found that Plaintiff was moderately limited in the ability to

interact appropriately with the general public, but that there was no other evidence of limitations in social functioning. (AR 77, 95). Consistent with this, Plaintiff reported that he shops with his wife, attends his son's football games, and gets along "great" with authority figures. (AR 188-94).

The positions identified by the VE do not exceed the mental limitations supported by the record. Two of the occupations, assembler (DOT 713.687-018) and sorter (DOT 521.687-086), require no more than Level One reasoning. (AR 59). As such, these jobs require no more than ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job," see http://www.occupationalinfo.org/appendxc_1.html. In addition to assembler and sorter, the VE also identified production inspector (DOT 726.684-110). (AR 59). None of these jobs involve significant interaction with people.

Accordingly, the Court finds that the ALJ properly assessed Plaintiff's physical and mental impairments in determining the RFC. To the extent that any errors were made, they were harmless, as the jobs identified by the VE accounted for limitations in the ALJ's step-three findings.

**C.  The ALJ Did Not Err In Evaluating Plaintiff's Credibility**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121,

1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina, 674 F.3d at 1112. In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)(1988)). In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen, 80 F.3d at 1282. Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Id. at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." Id. In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id. An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Here, the ALJ examined the Administrative Record and heard testimony from Plaintiff. Based on the record, the ALJ determined that Plaintiff had produced objective medical evidence of underlying impairments that "could reasonably be expected to cause some of the alleged symptoms." (AR 17). However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Id.).

The ALJ's reasons for rejecting the credibility of Plaintiff's subjective testimony are clear and convincing. First, the ALJ found that Plaintiff's subjective symptoms lacked support in the objective record, stating that Plaintiff was not fully credible "as the medical evidence does not fully support" his allegations.[7] (AR 23). For example, as previously detailed,

---

[7] See Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor

the ALJ observed treatment notes reflecting periodic improvements, describing Plaintiff's pain as "moderate, dull aching," and indicating that Plaintiff was "very pleasant" and "in no acute distress." (AR 18-19, 477, 532, 537, 543, 559, 563). Additionally, MRIs of Plaintiff's shoulders were essentially unremarkable, with the exception of marked AC arthrosis in the left shoulder. (AR 283-86). A May 7, 2012 MRI scan of the cervical spine also showed no stenosis with progression of degenerative changes and only moderate canal stenosis. (AR 519-20). With respect to mental limitations, the ALJ observed that Plaintiff "has no formal mental health treatment or psychiatric hospitalizations," as well as "no history of clear-cut mania, psychosis or anxiety disorders." (AR 20, 21). Instead, Plaintiff "is simply prescribed antidepressants by his primary care doctor." (AR 21).

Moreover, as previously discussed, the ALJ noted that when Plaintiff saw Dr. Kahmann on June 20, 2014, he complained of neck pain, back pain and radicular pain, and reported his pain to be a 6 on a 0/10 pain scale. However, Plaintiff simultaneously reported relief of his pain as well as his reactive depression with the use of Effexor. (AR 19). The ALJ noted that, at this particular appointment, while Plaintiff alleged being "uncomfortable" due to pain, his "motor strength was 4/5; had only diminished sensation; and, [Plaintiff] was

in determining the severity of the claimant's pain and its disabling effects.").

41

alert, cooperative and maintained good eye contact." (AR 19, 626-28). Additionally, in November 2011, Plaintiff informed his doctor that he was "planning on finding a job" after his next shoulder surgery, despite alleging disability beginning in October 2010. (AR 16, 319).

The ALJ also reasonably determined that Plaintiff's activities of daily living did not support his allegations of total disability. (AR 24). An ALJ may rely on a claimant's activities of daily living in assessing credibility not only if the activities are directly applicable to work, but also when they are inconsistent with the claimant's subjective allegations of disability. See Molina, 674 F.3d at 1112—13; Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ found that Plaintiff's reported activities of daily living "reveal a person capable of performing some level of substantial gainful activity." (AR 24). Specifically, the ALJ noted that while Plaintiff testified that he is "unable to work due to his back pain, neck pain, headaches and depression," he had earlier reported a long list of activities of daily living, including caring for family pets, preparing meals, performing light household chores, shopping, managing financial affairs, and socializing with family and one friend. Later, he reported being able to do a limited amount of cooking due to neck, back and shoulder problems and being able to drive a car and watch television. (AR 24). The ALJ appropriately determined that this "sort of activity reveals a [Plaintiff] who

is not constantly experiencing pain or depression" and that his activities of daily living are further proof that he is capable of performing at least a range of sedentary work. (AR 24).

The ALJ's also discredited Plaintiff's statements by citing to Plaintiff's inconsistent behavior and complaints. (AR 17, 19). Specifically, the ALJ noted that Plaintiff "was observed to make a very dramatic entry into the hearing room – leaning against walls and tables, heavy sighing, and extremely slow movements." (AR 17). The ALJ noted that this demonstration was in contrast to the fact that "no doctor has ever noted observing such excessive pain behavior or reported complaints from [Plaintiff] of this extreme pain (except, for the most recent visit in June 2014)." (AR 17). The ALJ noted that Plaintiff's "primary physician, and surgeon, noted no intractable pain nor recorded any observations that were consistent with [Plaintiff's] presentation at the hearing." (AR 19). The ALJ further noted that the only times Plaintiff was documented as having extreme pain were at a March 7, 2007 visit with Dr. Kahmann (AR 17, 510) and on February 25, 2010, when Plaintiff self-reported severe body aches and pain. (AR 17, 562). However, Plaintiff's physical examination on February 25, 2010, did not support this finding as Plaintiff was described as "pleasant; in no acute distress; and his physical examination was within normal limits, except for some pain in the right upper quadrant." (AR 17, 562-566).

In his Objections Plaintiff asserts that it was improper for the ALJ to reject his credibility based on observations of his behavior during the hearing. (Objections at 35-36). The Court rejects Plaintiff's characterization of this basis as "sit and squirm" jurisprudence and finds the ALJ's observations were relevant as an "ordinary technique of credibility evaluation." Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (the ALJ's reliance on his observations of the Plaintiff at the hearing was proper because Plaintiff's appearance was inconsistent with medical evidence and other symptoms).

Plaintiff's inconsistent complaints and behaviors, the inconsistencies between Plaintiff's statements and the objective evidence, and Plaintiff's activities of daily living, were "clear and convincing" reasons for discounting Plaintiff's testimony on the severity of his symptoms and limitations. See Thomas, 278 F.3d at 958-59 ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second guessing.").

//

//

//

## VI. RECOMMENDATION

For the reasons discussed above, IT IS RECOMMENDED that the district court issue an Order: (1) accepting and adopting this Final Report and Recommendation; and (2) directing that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: September 26, 2017

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE